**YOSHIO MURAKAMI, Appellant,**

v.

**John Foster DULLES, as Secretary of State, Appellee.**

No. 13977.

United States Court of Appeals Ninth Circuit.

April 13, 1955.

Wirin, Rissman & Okrand, Fred Okrand, Los Angeles, Cal., Leo Levenson, Portland, Ore., for appellant.

Warren E. Burger, Asst. Atty. Gen., Enoch E. Ellison, Paul J. Grumbly, Attys., Dept. of Justice, Washington, D. C., C. E. Luckey, U. S. Atty., James W. Morrell, Asst. U. S. Atty., Portland, Ore., for appellee.

Before DENMAN, Chief Judge, CHAMBERS, Circuit Judge, and HAMLIN, District Judge.

DENMAN, Chief Judge.

Murakami, once a Nisei citizen of the United States, appeals from a judgment of the district court dismissing his complaint brought under 8 U.S.C. § 903 [1] for a decree setting aside his renunciation of United States citizenship, adjudging he is a citizen or national of the United States and that he, coming to the United

1. Now 8 U.S.C.A. § 1503.

States solely to prosecute his suit, be given a passport to enter here. The court ordered that he be returned to Japan.

Murakami contends that the evidence does not support the findings of the district court, the principal finding so attacked being:

> "23. Plaintiff contends that during the time that he resided at Tule Lake Relocation Center, there prevailed an atmosphere of intimidation, coercion, under influence and duress, influencing him and others to renounce their United States citizenship. On this issue, plaintiff had the burden of proof and I find that plaintiff has not sustained this burden and that any such conduct, if any in fact existed, did not influence plaintiff's free will, choice and desire to renounce his citizenship, and on the contrary, it is obvious and the Court so finds, that plaintiff's loyalty during all times herein involved was all to Japan and still is."

An agreed statement of facts showed the conditions prevailing at the Tule Lake Relocation Center to be as fully described in our opinion deciding the case of Acheson v. Murakami, 9 Cir., 176 F.2d 953, which decision the government accepted. Violent pro-Japanese detainees beat up and knife slashed others who they thought were friendly to the United States, and at least one was murdered. Murakami testified to the court, which thus had him under observation through 83 pages of testimony, that he had renounced his United States citizenship under the same fear and coercion which we held in the earlier case of another Murakami, a woman, justified its restoration.

However, unlike that case, it also appeared in the agreed statement of facts that before he was transferred to the Tule Lake Center and while at the Poston Relocation Center he "executed Selective Service System DSS 304A 'Statement of U. S. Citizen of Japanese Ancestry', wherein plaintiff expressed his refusal to serve in the armed forces of the United States on combat duty wherever ordered, and refused to swear unqualified allegiance to the United States of America and to faithfully defend the United States from any or all attack by foreign or domestic forces, or to forswear any form of allegiance or obedience to the Japanese Emperor or any other foreign government, power, or organization."

■ We are unable to say that the district court's finding which, in effect, is that it refused to believe Murakami's testimony, which the court heard, is clearly erroneous.

Murakami claims that the following statement in the district court's opinion showed it applied a wrong principle in considering the testimony and the agreed facts.

> "A pre-trial order was entered and the case was tried. There is no doubt that the plaintiff renounced his American citizenship and persisted in the renunciation through a hearing held on February 15, 1945, when he was at the Tule Lake center. There are only two matters set up. First, he felt the government and the Army were no longer interested in having him as a citizen. Second, he feared death or great bodily harm because of some of the activities of the violent pro-Japanese in the Tule Lake camp. Neither of these reasons is, in the *opinion of the Court, sufficient.*"

The above quoted finding 23 makes clear that the setting up of the "two matters" was for the purpose of excusing Murakami's renunciation of citizenship and that they were "insufficient" in view of his other statements and the refusal of the court to believe his testimony.

■ Nor is there merit in Murakami's contention that the court erred in denying his motion that the court dismiss the action without prejudice made under F.R.C.P. 41(a) (2), 28 U.S.C.A., providing:

"(2) *By Order of Court.* Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper * * *."

The motion was served on the defendant on November 20, 1952 and filed the same day. On the previous January 19, 1952, the pre-trial proceedings covering 50 pages of agreed statement of facts, including the exhibits of the defendant, the plaintiff and defendant's contentions, and the issues of law and fact had been concluded, and all the plaintiff's trial testimony had been given and the plaintiff's case finished. Nothing remained but the introduction of the defendant's exhibits with which the plaintiff was familiar.

Plaintiff's ten months study of the case evidently indicated to him that he was likely to lose it. He thought he had a better chance if he were again to proceed before the State Department, urge the applicability of the first Murakami decision, and obtain an administrative ruling to set aside his renunciation of his citizenship and allow him to remain in the United States. Obviously since the earlier Murakami case was decided in 1949, he could have sought his administrative remedy first without causing the government the effort and expense of the instant case.

Clearly the court did not think here was a "technical failure of proof [and] there is nevertheless a meritorious claim," the latter a ground for voluntary dismissal in the Report of Proposed Amendments to Rules of Civil Procedure (1946) 64. Here the court thought there was no meritorious case. We concur in fully reasoned opinion of the Third Circuit, Ockert v. Union Barge Line Corp., 3 Cir., 190 F.2d 303, 304, with its full citation of supporting cases, that the district court here had the judicial discretion to deny the motion to dismiss the case. Cf. United States v. Pacific Fruit & Produce Co., 9 Cir., 138 F.2d 367.

The judgment is affirmed.