**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4523
_____

DANA HAYDEN, and;
DAN HAYDEN, Individually,
and as husband and wife,
Appellants

v.

WESTFIELD INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-12-cv-00390)
District Judge:  Honorable Mark R. Hornak
_____

Submitted under Third Circuit LAR 34.1(a)
on September 8, 2014

Before:  RENDELL, GREENAWAY, JR. and KRAUSE, *Circuit Judges*

(Opinion filed: September 18, 2014)

KRAUSE, *Circuit Judge*:

Appellants Dan and Dana Hayden ("the Haydens") appeal from three orders of the District Court: one denying their motion to join an additional defendant; one denying their motion to amend their complaint; and one denying their motion to voluntarily dismiss their complaint. For the reasons set forth below, we affirm.

I.    Background

Because we write primarily for the parties, we set forth only those facts and procedural history relevant to our conclusion.

This matter stems from an insurance dispute following a "hail and windstorm event" in Western Pennsylvania. The storm allegedly caused damage to the Haydens' roof, which allowed water to enter their home and damage the attic and interior bedrooms. At the time of the storm, the Haydens had a homeowner's insurance policy with Appellee Westfield Insurance Company ("Westfield").

The storm occurred on March 23, 2011, but the Haydens did not report any damage to Westfield until nearly six months later. Before anyone from Westfield inspected their home, the Haydens removed plaster and carpeting from their attic and from rooms on the second and third floors of their home. After a Westfield adjuster visited the property, Westfield decided that the Haydens' claim was better treated as two

2

individual claims: one for the hail damage to the roof and one for the resulting water infiltration. Westfield then issued the Haydens a payment for the hail damage totaling $741.63 (after a $1,000 deductible), but continued its investigation of the water infiltration claim.

On March 1, 2012, the Haydens filed suit against Westfield in the Court of Common Pleas of Westmoreland County, asserting claims of breach of contract, statutory insurance bad faith, and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("CPL"). Westfield removed the action to the United States District Court for the Western District of Pennsylvania on diversity grounds.

Ten months later, the Haydens filed a motion to join two additional defendants: Lisa Brown and Duncan Insurance Agency, the insurance agent and agency through which the Haydens filed their insurance claim.[1] Soon after, Westfield filed a motion to compel discovery from the Haydens. The District Court ruled on both motions on February 13, 2013. First, it denied the Haydens' motion for joinder, noting "the sparseness of [the Haydens'] Motion and supporting papers, and their complete failure to cite to or rely upon any applicable legal authority in support of their Motion." App. 32. The Court found that denial of joinder was proper for several reasons, including the effect of joinder on the Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1447(e).

---

[1] The Haydens alleged that Ms. Brown, an employee of Duncan Insurance Agency, gave false information about the Haydens' insurance claim to Westfield. Following joinder, the Haydens intended to move to have the case remanded to state court, as joinder would have destroyed diversity.

3

Second, the District Court granted Westfield's motion to compel discovery, although the Haydens did not comply before the close of discovery in February 2013.

As litigation continued, Westfield arranged to have an engineer inspect the Haydens' roof. The Haydens later alleged that during this process, Westfield hired Disaster Restoration Services ("DRS") to replace a tarp on the Haydens' roof and DRS negligently replaced the tarp with an underlayment, which required an excessive amount of nails. This allegedly caused enough damage to force the Haydens to install a new roof.

On April 1, 2013, Westfield filed a motion for summary judgment. The Haydens opposed summary judgment on their breach of contract and bad faith claims, but not on their CPL claim. Furthermore, the Haydens did not dispute any of the facts Westfield asserted in its Concise Statement of Material Facts, leading the District Court to treat those facts as admitted.[2]

With Westfield's summary judgment motion pending before the District Court, the Haydens filed two motions on May 23, 2013. First, the Haydens moved to join DRS, a Pennsylvania corporation, as an additional defendant ("Motion to Join DRS"). Second, they moved for leave to amend their complaint to add a negligence claim against DRS— but not Westfield—and to add allegations about the damage DRS allegedly caused to

---

[2] The Haydens failed to comply with Western District of Pennsylvania Local Civil Rule 56(E), which requires a party opposing summary judgment to file a Responsive Concise Statement of Material Facts. Under that rule, a district court will treat facts that are not specifically denied or otherwise controverted in a Responsive Concise Statement as admitted. W.D. Pa. Local Civ. R. 56(E); *see also* Fed. R. Civ. P. 56(e)(2).

their roof to their breach of contract and bad faith claims against Westfield ("Motion to Amend").

The District Court denied those motions on July 11, 2013. The Court held:

> Because the claims to be asserted against such proposed Additional Defendant (1) are not otherwise within the jurisdiction of this Court, (2) are not part of a common nucleus of operative fact with the original claims, (3) the denial of joinder will not prejudice the Plaintiffs' ability to assert them in state court, (4) the Additional Defendant to be joined by amendment has not been alleged to have had anything to do with the breach of contract/bad faith claims central to the original action, and (5) the Motions come late in the process of this case with no imperative reason that they be asserted in this civil action, the Motions for Joinder of Additional Defendant and for Leave to Amend, are therefore, denied.

App. 4-5. A month later, with the motion for summary judgment still pending, the Haydens filed a new lawsuit against Westfield and DRS in the Court of Common Pleas of Allegheny County and then filed a motion to voluntarily dismiss their federal complaint ("Motion to Dismiss").

The District Court denied the Haydens' Motion to Dismiss on October 25, 2013, finding that allowing the Haydens to "press the eject button and dismiss their motion at this late juncture would markedly prejudice Westfield," and that the motion "evidence[d] a backdoor attempt to shop for . . . a more favorable forum in state court." App. 10, 12. The District Court also granted Westfield's motion for summary judgment.[3]

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441. We have jurisdiction under 28 U.S.C. § 1291.

---

[3] The Haydens have not raised any arguments regarding the District Court's decision to grant summary judgment. Thus, any such arguments on that issue are deemed waived.

II.     Standard of Review

We review each of the District Court's orders for abuse of discretion.  *See Hagan v. Rogers*, 570 F.3d 146, 152 (3d Cir. 2009); *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 172 (3d Cir. 2009); *Garvin v. City of Phila.*, 354 F.3d 215, 219 (3d Cir. 2003); *In re Paoli R.R. Yard P.C.B. Litig.*, 916 F.2d 829, 863 (3d Cir. 1990).

III.    Discussion

a.  Reviewability of the July 11 Orders

As a threshold matter, we must determine whether review of the District Court's July 11, 2013 orders denying the Haydens' Motion to Join DRS and Motion to Amend (the "July 11 orders") is proper.  Westfield contends that the Haydens waived any right to review the July 11 orders because the Haydens included only the order issued on October 25, 2013 (the "October 25 order"), in their Notice of Appeal.  We disagree.

Although Federal Rule of Appellate Procedure 3(c) states that a notice of appeal must "designate the judgment, order or part thereof appealed from," Fed. R. App. P. 3(c), we "liberally construe the requirements of Rule 3(c)," *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999) (citing *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 858 (3d Cir. 1990); *Williams v. Guzzardi*, 875 F.2d 46, 49-50 (3d Cir. 1989)).  Accordingly, we have held review of orders not specified in the notice of appeal is appropriate where: "(1) there is a connection between the specified and unspecified order, (2) the intention to appeal the unspecified order is apparent, and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues." *Pacitti*, 193 F.3d at 777 (citing *Polonski v.*

6

*Trump Taj Mahal Assocs.*, 137 F.3d 139, 144 (3d Cir. 1998); *Tabron v. Grace*, 6 F.3d 147, 153 n.2 (3d Cir. 1993)).

Each of these criteria is satisfied here.  First, although Westfield argues that the July 11 orders were not connected to the October 25 order, the motions denied in each order were the means by which the Haydens sought to achieve the same end: pursuing claims against both Westfield and DRS in one forum.  Had the District Court granted the Haydens' Motion to Join DRS and Motion to Amend, it is doubtful the Haydens would have filed their Motion to Dismiss.[4]  The District Court recognized this, describing the three motions as part of a "daisy chain" of filings stretching back to the Haydens' first failed motion for joinder, all of which had the apparent goal of defeating federal jurisdiction.  App. 10 n.2.  Whether or not that was the goal, there is a connection between the specified and unspecified orders.  Second, the Haydens' intent to appeal the July 11 orders is apparent from their opening brief.  *See Pacitti*, 193 F.3d at 777 (finding sufficient intent to appeal a discovery order from plaintiffs' notice of appeal from summary judgment order and arguments in plaintiffs' opening appellate brief); *Polonski*, 137 F.3d at 144 (finding that "the appellate proceedings clearly manifest an intent to appeal").  And third, Westfield evidently had a full opportunity to brief the issues and does not argue that it was prejudiced.  Therefore, review of the July 11 orders is appropriate.

---

[4] This is especially true because, as discussed below, the District Court would have had to remand the case to state court if it had joined DRS as a defendant.

7

b.  Denial of the Haydens' Motion to Join DRS

The Haydens argue that the District Court abused its discretion by denying their Motion to Join DRS.  A plaintiff generally may join defendants in an action if the plaintiff (1) asserts a right to relief arising out of the same transaction or occurrence, and (2) "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2)(A)-(B).  The Haydens contend that Rule 20's requirements were satisfied because Westfield hired DRS to replace the tarp on the Haydens' roof so Westfield's expert could inspect the roof, making their claims against DRS part of the same transaction or occurrence that gave rise to the Haydens' complaint against Westfield.  The District Court, on the other hand, denied joinder because it found the matter wholly "distinct and distant from the insurance contract interpretation issues at the center of this case."  App. 4.

We cannot say the District Court's denial was an abuse of discretion.  The Haydens' breach of contract and statutory bad faith claims against Westfield arose out of Westfield's refusal to pay the Haydens' insurance claim as of March 2012.  In contrast, the Haydens' proposed negligence claim against DRS arose out of DRS's installation of an underlayment to their roof nearly a year later in February 2013—a claim they did *not* allege against Westfield.  These claims are notably distinct in both time and subject matter.  Thus, the District Court's denial of joinder under Rule 20 was well within its discretion.

Moreover, the District Court properly determined that it lacked subject matter jurisdiction over the Haydens' claims against DRS because adding DRS, a Pennsylvania citizen, as a defendant would have destroyed diversity. *See* 28 U.S.C. § 1332. The Haydens argue that the District Court could have proceeded under 28 U.S.C. § 1367, which allows district courts to exercise supplemental jurisdiction over "all other claims that are so related to claims in the action within [the district court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). But supplemental jurisdiction requires a "common nucleus of operative facts." *Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995). In light of the differences in time and subject matter between the Haydens' claims against Westfield and their claims against DRS discussed above, the District Court did not abuse its discretion in holding that the claims lacked a common nucleus of operative facts.[5]

Because the District Court would have lacked subject matter jurisdiction over the Haydens' claims against DRS, the Court had the option either to deny joinder or to permit joinder and remand the action to state court. *See* 28 U.S.C. § 1447(e).[6] While we have

_____

[5] Even if the Haydens could satisfy the common nucleus of operative facts requirement, the District Court would have lacked jurisdiction over the Haydens' claims against DRS in any event because DRS would have been a party joined under Rule 20, and § 1367(b) precludes district courts from exercising supplemental jurisdiction over "claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure . . . when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332." 28 U.S.C. § 1367(b); *see also* 13D Charles Alan Wright et al., *Federal Practice and Procedure* § 3567.2 (3d ed. 2014).

[6] Section 1447(e) provides: "If after removal the plaintiff seeks to join additional

9

not yet addressed the appropriate analytical approach to § 1447(e) (and need not do so here), the Fifth Circuit has instructed that when a district court is "faced with an amended pleading naming a new nondiverse defendant in a removed case, [it] should scrutinize that amendment more closely than an ordinary amendment," and should consider "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether [the] plaintiff has been dilatory in asking for amendment, whether [the] plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987); *see also City of Perth Amboy v. Safeco Ins. Co. of Am.*, 539 F. Supp. 2d 742, 746 (D.N.J. 2008) (noting that district courts within the Third Circuit have adopted the *Hensgens* approach).

Given these considerations, the District Court's decision to deny joinder, rather than permit joinder and remand the case, was a proper exercise of its discretion. The Haydens' Motion to Join DRS came well after the close of discovery and the briefing of dispositive motions. In fact, by the time the Haydens moved to join DRS, the Haydens had failed to respond to discovery, despite the District Court's order to compel, and they had already attempted to join two entirely different defendants whose joinder also would have destroyed federal jurisdiction. Further, as the District Court noted, the Haydens could have "easily and timely" filed suit against DRS in state court. App. 4. Thus, the

---

defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e).

District Court's denial of joinder was not an abuse of discretion under either Rule 20 or § 1447(e).

c. Denial of the Haydens' Motion to Amend

The Haydens also argue that the District Court abused its discretion by denying their Motion to Amend, contending that the District Court "focused almost exclusively on why the joinder of an additional defendant was improper, while paying little notice to how the Haydens' new allegations would affect or aid their bad faith case." Appellant's Br. 13. We disagree.

The District Court denied the Haydens' Motion to Amend for the reasons set forth in its order denying the Motion to Join DRS, which, in turn, referenced the Haydens' delay, lack of subject matter jurisdiction, and distinctions between the new allegations and the original allegations against Westfield. Thus, although delay alone would not be a sufficient basis to deny a motion to amend, *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001); *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978), the record here amply supports the District Court's decision.

Indeed, as to the proposed allegations against DRS, the record demonstrates that in addition to the rationale articulated by the District Court, any amendment would have been futile. Leave to amend may be denied for futility if "the complaint, as amended, would fail to state a claim upon which relief could be granted," *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410,

1434 (3d Cir. 1997), or where a federal court would lack subject matter jurisdiction over the amended complaint, *see Miklavic v. USAir Inc.*, 21 F.3d 551, 557-58 (3d Cir. 1994). Futility is apparent here because DRS had not been joined as a defendant and the District Court lacked subject matter jurisdiction over the Haydens' proposed claim against DRS.

Furthermore, as to the proposed allegations against Westfield, the record reflects that allowing an amendment at such a late stage would have been prejudicial to Westfield. "A district court may deny leave to amend a complaint if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party." *Cureton*, 252 F.3d at 272-73 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Factors to consider include "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton*, 252 F.3d at 273.

Here, the new allegations the Haydens sought to raise against Westfield arose out of a distinct event—the February 2013 repairs to their roof—and would have subjected Westfield to a new wave of discovery despite the Haydens' failure to comply with the District Court's order to compel. Moreover, the Haydens filed their Motion to Amend on May 23, 2013, after full briefing on Westfield's motion for summary judgment, so that adding new allegations would have required a new round of dispositive motions. Whereas Westfield would have been prejudiced by the introduction of new allegations after eighteen months of litigation, the Haydens were not prejudiced by the denial of their motion, as they could still assert their new claims in a future action, and, indeed, have

since done so in state court.  Under these circumstances, denial of the Motion to Amend was proper.[7]

        d.  Denial of the Haydens' Motion to Voluntarily Dismiss Their Complaint

Finally, the Haydens argue the District Court abused its discretion by denying their Motion to Dismiss.  After a summary judgment motion has been filed, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper," Fed. R. Civ. P. 41(a)(2), and the decision to allow voluntary dismissal is left to the sound discretion of the district court, *Ferguson v. Eakle*, 492 F.2d 26, 29 (3d Cir. 1974); *Ockert v. Union Barge Line Corp.*, 190 F.2d 303, 304 (3d Cir. 1951).  That said, "Rule 41 motions should be allowed unless [the] defendant will suffer some prejudice other than the mere prospect of a second lawsuit." *In re Paoli R.R. Yard P.C.B. Litig.*, 916 F.2d at 863 (internal quotation marks omitted).

---

[7] The Haydens argue that "[t]he continuing conduct on the part of the insurer is directly relevant to [their] bad faith claim against Westfield," relying on *W.V. Realty, Inc. v. Northern Insurance Co.*, 334 F.3d 306, 314 (3d Cir. 2003) ("*W.V. Realty*").  Appellant's Br. 11.  Plaintiffs' reliance on *W.V. Realty* is misplaced.  *W.V. Realty* recognized certain circumstances where courts have permitted bad faith claims to survive motions to dismiss based on conduct that occurred after the insured filed suit, including where insurers made misrepresentations to the court, filed baseless or abusive motions, or engaged in other conduct "beyond a discovery violation[] suggesting that the conduct was intended to evade the insurer's obligations under the insurance contract." 334 F.3d at 314.  Neither the Haydens' Motion to Amend nor their proposed Second Amended Complaint alleged sufficient facts to illustrate how Westfield's conduct in hiring DRS to replace the tarp on the Haydens' roof constituted continuing bad faith.  Rather, the Haydens simply alleged that DRS was negligent in replacing the tarp and that Westfield was responsible.  In any event, this argument does not change our holding that denial of amendment was appropriate because of prejudice to Westfield.

13

We conclude, however, that there was sufficient prejudice to warrant denial of dismissal here. Chief among the factors to consider in determining whether a defendant will suffer prejudice are the extent to which litigation has progressed and the extent to which the defendant will be exposed to new litigation in another forum. *See Ferguson*, 492 F.2d at 28-29; *Ockert*, 190 F.2d at 304 (noting that voluntary dismissal is "an increasingly burdensome matter to one's opponent" after an answer is filed and case preparation progresses).

Our decision in *Ferguson* is instructive. There, we determined that the district court abused its discretion in permitting the plaintiffs' voluntary dismissal because of the prejudice to the defendants who were "ordered to defend anew" in state court "[f]ourteen months after they became defendants in one case . . . and at least two months after they had expected that all discovery had been completed." *Ferguson*, 492 F.2d at 29. Recognizing that the plaintiffs were primarily motivated by a desire to combine the action with a suit against a different defendant in state court (one whose joinder in the federal action would have destroyed diversity), we held that their desire to "kill two birds with one stone" was not a compelling reason to dismiss at such a late date, and we "express[ed] extreme doubt that these circumstances would have been persuasive" even if the motion to dismiss had been presented prior to the close of discovery. *Id.* at 29 & n.8.

Those same considerations apply with even more force here. The Haydens' Motion to Dismiss came seventeen months after the start of litigation and six months after the close of discovery, and as the District Court noted, it is apparent that their

14

primary, if not only, reason for dismissal was to litigate against both Westfield and DRS in state court, i.e., to "kill two birds with one stone."  The Haydens contend that Westfield will suffer little prejudice because it can use the same arguments, depositions, testimony, and documents in state court as it did in federal court, but Westfield's ability to recycle its federal court litigation materials is little consolation, particularly when Westfield evidently never received much of the discovery it sought from the Haydens, even after its successful motion to compel.  Under these circumstances, the District Court did not abuse its discretion in denying the Haydens' Motion to Dismiss.

IV.    Conclusion

The District Court acted well within its discretion when it denied the Haydens' Motion to Join DRS, Motion to Amend, and Motion to Dismiss.  We therefore affirm.